E-FILED
Monday, 05 October, 2026 10:18:54 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURTS**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **BARRI GAY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-3275-SEM-DJQ** |
| | ) | |
| **K. BLASER, *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff Barri Gay, proceeding *pro se* and currently in custody at the East Moline Correctional Center, filed a Complaint (#1) on August 25, 2026. Plaintiff alleges in his Complaint that he received inadequate dental care while in custody at Taylorville Correctional Center. Plaintiff names as Defendants: Healthcare Unit Administrator K. Blaser, Dr. Jacobson, John Doe Dentist, and Jane Doe Dental Assistant. The Court granted Plaintiff leave to proceed *in forma pauperis*, and the case is now before the Court for a merit review of his claims.

## BACKGROUND

Plaintiff broke his tooth at Taylorville on September 4, 2024. The next day, he was seen in the Healthcare Unit and told that he would be added to the dental line. On September 8, John Doe Dentist examined Plaintiff but told him there would be a five-month wait to have the tooth filled.

On October 20, 2024, Plaintiff saw a nurse for pain near the broken tooth. He was given Tylenol for the pain.

On December 7, 2024, Plaintiff received dental x-rays. Those x-rays showed that, in addition to the broken tooth on his left side, there was a tooth on his right side with a cavity that required filling. John Doe told Plaintiff that he would be able to “get to” the original broken tooth on the left in approximately two months, at which point Plaintiff would need to wait five more months before John Doe could fill the cavity in the right tooth.

John Doe noted to Plaintiff that, in two months, the broken left tooth might be in a condition where it needed to be extracted, and five months after that the right tooth could very well be in the same condition. He thus suggested that Plaintiff take the left tooth

off the filling list and put it on the extraction list. Then Plaintiff could add the right tooth to the filling list immediately. Plaintiff suggested that John Doe could "fill them now and save them both," but Jane Doe Dental Assistant told Plaintiff, "It doesn't work like that." Plaintiff was told that there were approximately 100 people on the filling list and 75 people on the extraction list. Plaintiff declined to have his tooth extracted and was given Tylenol.

On December 29, 2024, the pain in Plaintiff's broken left tooth was so bad that he could not eat, sleep, or concentrate. He filed a grievance.

On January 29, 2025, John Doe filled Plaintiff's left tooth. Plaintiff was then told that it would be approximately five months until they could get to his right tooth. Plaintiff suggested that, since they were there anyway, they should fill his other tooth. But the dentist and dental assistant informed him that only one side of the mouth could be worked on per visit.

Compounding matters, Plaintiff was informed at his January 29 visit that new x-rays had shown that a third tooth, on the left side of Plaintiff's mouth, had a cavity that needed to be filled. John

Doe estimated that he would get to that tooth in ten months. Plaintiff pointed out that that was the side of the mouth the dentist had just worked on, so he might as well fill the new cavity. The dentist told Plaintiff he could not do that because there was another appointment after Plaintiff. Plaintiff suggested that having the next patient wait ten extra minutes might make more sense that Plaintiff having to wait ten more months. To this, Jane Doe Dental Assistant responded: “I make the appointments, and [people] who write grievances, usually end-up getting there [sic] teeth extracted, rather than repaired around here, and so you have your facts straight, we have up to a year to remedy a tooth.” Plaintiff filed another grievance.

On February 4, 2025, Plaintiff was transferred to Big Muddy River Correctional Center. After Plaintiff informed a nurse about pain in the tooth on his right side, Plaintiff was told he would be put in the dental line and was given Orajel. On March 15, he returned to sick call for pain in the same tooth and was again given Orajel. By April 20, Plaintiff was having pain in both of the teeth that needed fillings.

Plaintiff alleges that "several months" later he saw a dentist, Defendant Dr. Jacobson. Jacobson told Plaintiff that the list for extractions was shorter than the list for fillings, but he could provide no estimated timetable on either.

On September 23, 2025, Dr. Jacobson filled the cavity in Plaintiff's right tooth. He told Plaintiff there was no telling when he might get to the other tooth. Dr. Jacobson told Plaintiff he could not fill the left tooth at that appointment. Plaintiff also complained of a bump on his gums, near the tooth that had been filled that day. Jacobson felt it, but he told Plaintiff he did not know what it was.

Over the ensuing months, the pain in Plaintiff's left tooth (the third tooth in need of repair) increased. Meanwhile, the bump on Plaintiff's gums had turned into two sores.

Plaintiff was transferred to East Moline on April 8, 2026. A dentist there told Plaintiff that he was suffering from "irreversible pulpitis," and that each of the three teeth discussed here would need to be extracted. The dentist told Plaintiff that he had a mass on his jaw and a growth near the left-side teeth due to infection.

On June 17, 2026, Plaintiff saw an oral surgeon, who

confirmed that each of the three teeth were in need of immediate extraction. The mass on his jaw was confirmed to be scar tissue caused by the infection. The other growth was a lymph node. Plaintiff alleges that the oral surgeon extracted Plaintiff's teeth and removed the lymph node.

## Analysis

Request for Counsel

Plaintiff has filed a Motion to Request Counsel (#4). In determining whether the Court should attempt to find an attorney to voluntarily take a case, the Court asks: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff's Motion does not address the difficulty of his case or Plaintiff's ability to litigate it himself. Plaintiff can read and write the English language and has some college education. Indeed, his Complaint is exhaustive and cogent. Moreover, Plaintiff is currently representing himself in another matter in this District, and some of

his claims have survived a summary judgment motion. *See Gay v. McDannald*, C.D. IL. Case no. 25-CV-3009. The Court has no doubt, especially at this early stage, that Plaintiff is competent to litigate this matter himself. Plaintiff's Motion to Request Counsel (#4) is therefore DENIED.

Merit Review

Pursuant to 28 U.S.C. § 1915A, the Court must "screen" Plaintiff's complaint and, through such process, identify and dismiss any legally insufficient claim or the entire action if warranted. A claim is defective if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A. In reviewing a complaint, the Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

"Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Dominguez*, 5 F.4th at 824 (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

"To be 'serious,' a medical condition must be one that a physician has diagnosed as needing treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quotation omitted). "To show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it. Deliberate indifference requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm." *Id.*

"A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the

result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). A cavity in a tooth "can constitute an objectively serious medical condition because of pain and the risk of infection." *Id.* at 440.

Plaintiff has stated a claim for deliberate indifference to serious medical needs against Defendant John Doe Dentist for the delay in filling the original left tooth. Plaintiff describes that tooth as being broken, suggesting a somewhat more pressing condition than a simple cavity. Indeed, the broken tooth caused progressive pain over the five months that Plaintiff waited for treatment, to the point that he could not eat, sleep, or concentrate. *See Hoeft v. Menos*, 347 F. App'x 225, 227 (7th Cir. 2009) (finding that the plaintiff stated a deliberate indifference claim where he alleged that the dentist "knew about his condition for six months without acting [and] refused to expedite treatment" despite knowledge of condition).

Plaintiff has also stated a First Amendment claim against Defendant Jane Doe Dental Assistant. "The first amendment protects speakers from threats of punishment that are designed to discourage future speech." *Fairley v. Andrews*, 578 F.3d 518, 525

(7th Cir. 2009). A plaintiff bringing a First Amendment claim must allege, among other things, conduct "that would likely deter future First Amendment activity[.]" *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017).

Plaintiff alleges that in response to his complaints about not being treated, Jane Doe Dental Assistant told him that "[people] who write grievances, usually end-up getting there [sic] teeth extracted, rather than repaired around here[.]" This statement can be plausibly construed as a threat—if Plaintiff continued to file grievances about his dental care, he would not get the treatment he required, but would instead have his tooth pulled. Such a threat, explicitly tied to Plaintiff's filing of grievances, supports a First Amendment claim.[1]

As for Dr. Jacobson, the Court finds that claims against him are not properly joined with those against John and Jane Doe.

A prisoner may join Defendants in the same action only if the claims against each one "aris[e] out of the same transaction,

[1] The Court notes here that Plaintiff does not describe any conduct by K. Blaser in his Complaint and has thus stated no claim against her.

occurrence, or series of transactions or occurrences[.]" *Mitchell v. Kallas*, 895 F.3d 492, 502-03 (7th Cir. 2018) (quoting Fed. R. Civ. P. 20(a)(2)(A)). "To be precise: a plaintiff may put in one complaint every claim of any kind against a single defendant, per Rule 18(a), but a complaint may present claim #1 against Defendant A, and claim #2 against Defendant B, only if both claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (quoting Rule 20(a)(2)(A)). In short, "unrelated claims against different defendants belong in separate lawsuits[.]" *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

That Plaintiff's claims against John Doe Dentist and Dr. Jacobson both relate to delays in his dental care does not render those claims part of the same series of transactions. Subject matter is not the operative inquiry for permissive joinder; Rule 20 does not permit Plaintiff to bring all claims related to his teeth in a single action. Plaintiff has alleged that John Doe Dentist delayed treatment on a broken tooth on his left side. He alleges that Dr. Jacobson later delayed treatment on cavities in two different teeth.

Moreover, the claim against Dr. Jacobson is decidedly more complex, as Plaintiff alleges that Dr. Jacobson failed to diagnose or treat broader dental issues.

"Rule 21 grants district courts broad discretion to sever or dismiss claims and parties that are improperly joined in the same action." *Davenport v. Baker*, 2024 WL 3088529 (S.D. Ill. June 21, 2024). If Plaintiff wishes to proceed against Dr. Jacobson on his other claim, he will have to file a separate lawsuit in the Southern District of Illinois, subject to the usual requirements of the Prisoner Litigation Reform Act. *See id.* (citing *Wheeler*, 689 F.3d at 683) (district courts may direct a plaintiff "to file separate complaints, each confined to one group of injuries and defendants")). Because the dismissed claim is that which arose the most recently, there will be no immediate statute of limitations implications to this dismissal. Plaintiff transferred to Big Muddy in February 2025. The statute of limitations on this claim could therefore expire as soon as February 2027. If Plaintiff intends to pursue this claim in the Southern District, he must do so promptly or risk the claim being time-barred.

Finally, because the only Defendants against whom Plaintiff has stated claims are John and Jane Doe, the Court directs the Clerk to add as a Defendant, in his official capacity, Joshua McDannald, the current Warden at Taylorville Correctional Center. *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555-56 (7th Cir. 1996) (court may name high level administrators as defendants for purpose of identifying Doe defendants).

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Motion to Request Counsel (#4) is DENIED.

2. Pursuant to its review, the Court finds that Plaintiff's Complaint states a claim for deliberate indifference to serious medical needs against Defendant John Doe Dentist and a First Amendment claim against Defendant Jane Doe Dental Assistant. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3. The Clerk is directed to DISMISS K. Blaser and Dr. Jacobson as defendants in this case.

4. The Clerk is directed to add as Defendant, in his official capacity, Taylorville Warden Joshua McDannald for the purpose of responding to discovery in this matter related to the identities of the Doe Defendants.

5. The Clerk is directed to effect service of process on McDannald pursuant to the Court's standard procedures.

6. This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

7. The Court will attempt service on Defendants by mailing waivers of service to them. Defendants have sixty (60) days from the date the waiver is sent to file an answer. If Defendants have not filed answers or appeared through counsel within ninety (90) days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will

enter an Order setting discovery and dispositive motion deadlines.

8. With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9. Defendants shall file an answer within sixty (60) days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

10. This District uses electronic filing, which means that,

after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to defense counsel copies of motions and other papers that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled, unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a Scheduling Order, which will explain the discovery process in more detail.

11. Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

12. Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone

number will result in dismissal of this lawsuit, with prejudice.

13. If a Defendant fails to sign and return a waiver of service to the Clerk within thirty (30) days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshal Service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

14. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

ENTERED October 5, 2026.

s/ *Sue E. Myerscough*

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**